UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| AHMAD MOURAD, HOUSE OF HARDTOPS, INC., MOSS & ASSOCIATES, INC., KAERY KORKES, and UNIVERSAL LOCK & SECURITY SERVICE, INC.,<br><br>        Plaintiffs,<br><br>v.<br><br>MARATHON PETROLEUM COMPANY LP,<br><br>        Defendant. | Case No. 14-cv-14217<br><br>Honorable Patrick J. Duggan |

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND DISMISSING PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE

In this diversity action, Plaintiffs – a group of current and former business owners and operators – are suing Defendant Marathon Petroleum Company, LP in connection with its operation of a refinery in the Oakwood Heights subdivision of the City of Detroit, Michigan. In their pleading for relief, Plaintiffs endeavor to state state-law claims for (1) tortious interference with business relationship or expectancy and (2) nuisance, and have requested damages in the amount of $75,000 each.

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint.  The matter has been fully briefed.  Having determined that oral argument would not significantly aid the decisional process, the Court dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).  For the reasons set forth herein, the Court will grant Defendant's motion.

## I.     BACKGROUND

**A.     Factual Allegations**

Plaintiffs Ahmad Mourad, House of Hardtops, Inc., Moss & Associates, Inc., Kaery Korkes, and Universal Lock & Security Service, Inc. (collectively, "Plaintiffs") are or were owners or operators of small retail businesses located in or near the Oakwood Heights subdivision of the City of Detroit.[1]  (Second Am. Compl. ¶ 1.)  Defendant Marathon Petroleum Company owns and operates an oil refinery (the "Detroit Refinery") on Fort Street in Detroit, in close proximity to Oakwood Heights.  (*Id.* ¶ 3.)  While parts of Oakwood Heights are zoned residential, one need not strain the imagination to envision the environmental impact an oil refinery would have on nearby properties.[2]  Thus, when Defendant

---

[1] This neighborhood is roughly bounded by south Fort Street, the River Rouge and Fordson Island, South Dix, and Schaefer Highway.

[2] Indeed, Plaintiffs allege several facts drawing a connection between the Detroit Refinery's operations and environmental degradation, such as that "the

2

"expanded" the Detroit Refinery's operations in November of 2012 by commencing "operation of the Detroit Heavy Oil Upgrade Project (DHOUP) facility on its premises[,]" a residential buyout program (the "Oakwood Heights Property Purchase Program") initiated by Defendant in November of 2011 gained momentum.[3]  (*Id.* ¶¶ 4, 8.)  Plaintiffs allege that, as of the date the Second Amended Complaint was filed, Defendant had acquired "at least 277 of 294 [or, ninety-four percent of,] residential properties" in Oakwood Heights.  (*Id.* ¶ 8.)  The Oakwood Heights Property Purchase Program, which is "described in detail in a public 'Informational Handbook[,]'" did not apply to commercial properties.  (*Id.* ¶¶ 9-10.)  Because such a significant proportion of Oakwood Heights residents took the buyouts offered by Defendant, Plaintiffs' businesses suffered financial losses, depending as they did on the residents of Oakwood Heights for revenue generation.  (*Id.* ¶¶ 11h, 11j.)

---

owners of the refinery have been sued at least four times" over the past forty-two years "by nearby residents alleging the refinery caused a nuisance to them by polluting their air[,]" and that "[i]n 2012, Marathon Petroleum Company LP[] was named as a defendant by the United States of America on behalf of the [Environmental Protection Agency] in [a lawsuit filed in the United States District Court for the Eastern District of Michigan] for [] ongoing violations of environmental statutes and rules at its Detroit Refinery."  (Second Am. Compl. ¶¶ 11a, 11g.)

[3] Once up and running, the DHOUP provided the Detroit Refinery with the capacity to process tar sands.

Plaintiffs also allege that the DHOUP – which Defendant began operating in November 2012 after obtaining permits and approval from the State of Michigan during the period between November of 2002 and March of 2008 – increased ambient air pollution in the Oakwood Heights neighborhood, evidenced by admissions to this effect contained in the Application to Install filed by Defendant in November of 2002. (*Id.* ¶¶ 11c, 11e, 20 ("[O]n or about November 6th, 2012 and continuing thereafter, defendant released from its refinery into the ambient air various air pollutants . . . and hazardous air pollutants [] increased by the DHOUP over previous emissions from the whole refinery[.]").) The pollutants, carried by air currents, made their way to Plaintiffs' premises. (*Id.* ¶ 21.)

## B.    Procedural History

Plaintiffs instituted the present civil action on November 3, 2014. (ECF No. 1.) On December 13, 2014, after Defendant filed a motion to dismiss, Plaintiffs filed an amended pleading containing two counts: Count I – Intentional Interference with Business Relationship or Expectancy and Count II – Nuisance. (ECF No. 8.) Nine days later, Defendant filed a motion seeking dismissal of the amended complaint. (ECF No. 11.) This motion was fully briefed (ECF Nos. 13-15, 17), and the Court held a motion hearing in conjunction with this motion on June 15, 2015, during which the Court heard the arguments of counsel. At the conclusion of this hearing, the Court permitted Plaintiffs to amend their pleading

once more to provide additional factual enhancement in support of the legal

theories advanced in their first amended complaint.  (ECF No. 19.)

Plaintiffs filed a Second Amended Complaint containing the same two

counts as the previous complaint on July 17, 2015 (ECF No. 21), which Defendant

promptly moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

on July 22, 2015 (ECF No. 22).  This motion, which has been fully briefed, is the

subject of this Opinion and Order.  (ECF Nos. 24 (response), 26 (reply), 27(sur-

reply).)

## II.    GOVERNING LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a

court to assess whether a plaintiff's pleadings state a claim upon which relief can

be granted.  Fed. R. Civ. P. 12(b)(6).  As articulated by the Supreme Court of the

United States, "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1974

(2007)).  This facial plausibility standard requires claimants to put forth "enough

fact[s] to raise a reasonable expectation that discovery will reveal evidence of" the

requisite elements of their claims.  *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1965.

Even though a complaint need not contain "detailed" factual allegations, its

5

"factual allegations must be enough to raise a right to relief above the speculative level." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965) (internal citations omitted).

While courts are required to accept the factual allegations in a complaint as true, *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965, the presumption of truth does not apply to a claimant's legal conclusions, *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. *See also Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) (cautioning that legal conclusions "masquerading as factual" allegations are insufficient to withstand a properly supported motion to dismiss). Therefore, to survive a motion to dismiss, a plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548 (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65) (internal citations and quotations omitted); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]").[4]

---

[4] Motions filed pursuant to Rule 12(b)(6) are "interpreted in conjunction with Federal Rule of Civil Procedure 8[.]" *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 467 (6th Cir. 2011).

Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of [a legal transgression], the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citations omitted).

When the jurisdictional basis of a lawsuit is predicated upon diversity of citizenship, federal courts must apply "the substantive law of the forum state." *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358 (6th Cir. 2013); *see also Erie v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938) (explaining that in diversity cases, state law governs matters of substance while federal law dictates procedure).  The torts set forth in Plaintiffs' Second Amended Complaint occurred in, and purportedly affected property situated in, the State of Michigan, and the parties do not dispute that Michigan law applies.  Consequently, the Court is obligated to apply Michigan substantive law in accordance with the decisions of the Michigan Supreme Court.  *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999).  Unlike case law emanating from a state's highest court, legal interpretations articulated by intermediate state appellate courts are not binding;

7

such articulations, are, however, "viewed as persuasive." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008).

## III.   ANALYSIS

Defendant seeks dismissal of both counts in Plaintiffs' Second Amended Complaint, arguing that the factual allegations are insufficient to give rise to a plausible claim for relief under either legal theory advanced therein.  (Def.'s Br. 1 ("In all three versions of their complaint, Plaintiffs, through nothing more than unfounded speculation and conclusions, have attempted to spin completely lawful conduct into a nefarious scheme to ruin their businesses.").)  Plaintiffs predictably disagree.  The Court addresses each count in turn.

### A.   Count I – Tortious Interference with Business Relationship or Expectancy

Plaintiffs' theory with respect to their tortious interference with business relationship or expectancy count is that Defendant created and executed the Oakwood Heights Property Purchase Program in a dual-pronged effort to reduce future liability associated with environmental contamination and to simultaneously cause Plaintiffs' property values to plummet, so that it can acquire the properties in the future for less than market value.  Defendant contends that this count must be dismissed because Plaintiffs' pleading fails to allege any specific, affirmative acts by Defendant which would corroborate Defendant's improper motive.  For the reasons explored more fully below, the Court agrees with Defendant.

8

In Michigan, the intentional tort of interference with business relationship or expectancy "has been widely recognized." *Midwest Aluminum Mfg. Co. v. Gen. Elec. Co.*, No. 4:90-CV-143, 1992 U.S. Dist. LEXIS 21382, at *5 (W.D. Mich. Aug. 4, 1992) (unpublished).[5] The elements of this cause of action "are [(1)] the existence of a valid business relationship or expectancy, [(2)] knowledge of the relationship or expectancy on the part of the defendant, [(3)] an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and [(4)] resultant damage to the plaintiff." *Dalley v. Dykema Gossett, P.L.L.C.*, 287 Mich. App. 296, 323, 788 N.W.2d 679, 696 (Mich. Ct. App. 2010) (quotation omitted).  With respect to the third element, "the interference . . . must be improper in addition to being intentional." *Formall, Inc. v. Cmty. Nat'l Bank of Pontiac*, 166 Mich. App. 772, 779, 421 N.W.2d 289, 293 (Mich. Ct. App. 1998); *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 383, 670 N.W.2d 569, 579 (Mich. Ct. App. 2003) (explaining that a party asserting a claim of tortious interference "must establish that the interference was improper") (citation omitted).  In the context of tortious interference claims, "[i]mproper means illegal, unethical, or fraudulent." *Formall,*

---

[5] As noted in *Midwest Aluminum*, the nomenclature used to label the tort has varied over time, sometimes being referred to, for example, as "tortious interference with advantageous business relationship" or "tortious interference with prospective advantage."  No. 4:90-CV-143, 1992 U.S. Dist. LEXIS 21382, at *6 n.2.

9

*Inc.*, 166 Mich. App. at 779, 421 N.W.2d at 293.  "'[I]mproper' interference can be shown either by proving (1) the intentional doing of an act wrongful per se, or (2) the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiffs' contractual rights or business relationship." *Advocacy Org.*, 257 Mich. App. at 383, 670 N.W.2d at 579 (citation omitted). "Where the defendant's actions were motivated by legitimate business reasons, it would not constitute improper motive or interference." *Dalley*, 287 Mich. App. at 324, 788 N.W.2d at 696 (quotation omitted).

In the instant case, Plaintiffs do not allege the doing of an act wrongful per se.[6] Thus, to withstand dismissal, the Court must evaluate whether Plaintiffs' pleading for relief alleges, "with [the requisite level of] specificity, affirmative acts by the defendant that corroborate the improper motive of the interference." *Dalley*, 287 Mich. App. at 324, 788 N.W.2d at 696 (quotation omitted); *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 287 (6th Cir. 2010). Defendant contends that Plaintiffs' pleading fails in this regard, suggesting that Plaintiff's tortious interference claim "'begins and ends with the third element.'"[7]

_____

[6] A per se wrongful act is "an act that is inherently wrongful or an act that can never be justified under any circumstances." *Maiberger v. City of Livonia*, 724 F. Supp. 2d 759, 778 (E.D. Mich. 2010) (quotation omitted).

[7] Although the main thrust of Defendant's argument is that Plaintiffs' claim fails on the basis that they have not provided sufficient facts to allow this Court to plausibly infer that Defendant acted maliciously for the purpose of interfering with

(Def.'s Br. 9 (quoting *Elias v. Fed. Home Loan Mortg. Corp.*, 581 F. App'x 461,

464 (6th Cir. 2014) (unpublished)).)

As Defendant convincingly argues, the main problem afflicting Plaintiffs'

Second Amended Complaint is that the factual allegations do not plausibly support

the conclusion that Defendant acted with malice or for the purpose of interfering

with Plaintiffs' businesses.  Plaintiffs allege that Defendant instituted the property

purchase program with the following "improper motives:"

> (a)  To acquire domain over the Oakwood Heights subdivision for future expansion of the refinery and access to the Rouge River;
>
> (b)  To foreclose being sued again by Oakwood Heights residents for environmental pollution from its expanded refinery;
>
> (c)  To shed or reduce Marathon's liability to Oakwood Heights residents for the long standing contamination of the neighborhood brought about by Marathon's continuing and expanding discharge of pollutants into the atmosphere of the Oakwood Heights area; and,

---

Plaintiffs' businesses, Defendant suggests that Plaintiffs' claim fails for other reasons.  For example, Defendant indicates that "Plaintiffs state that as of November 2011, they had business expectancies and relationships with residents of Oakwood Heights "who were customers of plaintiffs' businesses."  (Def.'s Br. 9 n.1 (quoting Second Am. Compl. ¶ 5).)  Defendant points out that "this lone allegation is not supported with any facts to suggest any specific business expectancy that Plaintiffs would have realized but for the alleged tortious conduct."  (*Id.* (citing *Jankovic v. Int'l Crisis Grp.*, 593 F.2d 22, 29-30 (D.C. Cir. 2010) ("A claim of tort[i]ous interference with prospective business relations cannot survive where the plaintiff does not allege any specific future business relations or expectancies and only provides general references to potential opportunities.")).)  However, because the Court agrees with Defendant that Plaintiffs have failed to adequately allege an improper motive, the Court need not address the other elements of Plaintiffs' tortious interference claim.

    (d) To diminish the market values of plaintiffs' properties by making
        itself the only viable buyer or realty in the area.

(Second Am. Compl. ¶¶ 14a-14d.)  To support the inference of malice and the

claim that Defendant possessed the intent to interfere with Plaintiffs' business

expectancies, Plaintiffs explain that Defendant knew that Plaintiffs relied on

neighborhood residents for revenue yet declined to offer commercial entities a

buyout similar to those offered to area homeowners.  (*Id.* ¶¶ 11o, 12.)  Similarly,

Plaintiffs indicate that Defendant knew that by depopulating the neighborhood of

residents, Plaintiffs would go out of business and that their property values would

plummet.  By purchasing the majority of residential properties in the community,

Defendant knew that it would be "the only viable buyer of realty in the area[,]" and

that it could therefore acquire Plaintiffs' property for future expansion of the

Detroit Refinery.  (*Id.* ¶¶ 12p, 14a, 14d.)  These factual allegations, however, do

not permit this Court to draw the reasonable inference that Defendant acted with

the requisite impermissible intent to interfere with Plaintiffs' businesses. The

United States Court of Appeals for the Sixth Circuit's analysis in *Elias*, *supra*, is

instructive in this regard.

      In *Elias*, a panel of the Sixth Circuit was tasked with reviewing a district

court's dismissal of a tortious interference claim, among others, pursuant to

Federal Rule of Civil Procedure 12(b)(6).  Elias, a real estate broker who owned a

brokerage company, claimed that Freddie Mac intentionally interfered with his business expectancies by adding him to an "Exclusionary List" consisting of businesses that Freddie Mac suspected of fraudulent or unethical business practices or practices that violated various mortgage industry regulations. 581 F. App'x at 462. As a result of being placed on this list, Elias's business suffered harm because mortgage servicers ceased doing business with him and his company. *Id.* at 463. The district court dismissed the tortious interference claim, concluding that Elias had presented "no plausible allegations that Freddie Mac was motivated by anything other than its legitimate business purpose" when it placed Elias on the list. *Id.* at 646 (quoting district court).

On appeal, the Sixth Circuit affirmed, pointing to two specific deficiencies in Elias's pleading. First, Elias admitted that he had engaged in the business practice Freddie Mac identified as questionable and potentially exposing it to risk. *Id.* at 465. Second, the Sixth Circuit determined that Elias's complaint failed to plausibly allege that Freddie Mac acted with malice because Elias did not allege a plausible reason to believe that Freddie Mac placed him on the list for an improper reason. *Id.* In short, the Sixth Circuit concluded that Freddie Mac placed Elias on the list for a legitimate business reason, therefore defeating the tortious interference claim. *Id.* at 466.

As in *Elias*, Plaintiffs' allegations do not permit the Court to draw the fair inference that Defendant acted improperly as it pertains to the Oakwood Heights Property Purchase Program, namely because the factual allegations do not plausibly support the conclusion that Defendant acted with the purpose of interfering with Plaintiffs' business operations or that it acted with malice, both of which are required to state a viable claim for relief. Simply stated, and taking Plaintiff's allegations as true, this Court is unable to infer that Defendant instituted the property purchase program for any reason other than its legitimate business objectives. There is nothing inherently wrongful or improper about Defendant's desire to expand the Detroit Refinery's operations and to purchase surrounding property to facilitate this expansion.[8] Neither is there anything improper about offering neighborhood residents a buyout, even if the buyouts were motivated by a desire to stem future liability.

Plaintiffs' allegations that Defendant supposedly failed to provide neighborhood residents with sufficient information to make an informed decision

---

[8] Defendant suggests that the land was acquired for the legitimate business purpose of creating a green space around the Detroit Refinery. (Def.'s Br. 1, 3.) Because there is nothing in Plaintiffs' Second Amended Complaint regarding Defendant's intent to create a green space, the Court does not credit this explanation. Further, although Defendant challenges the veracity of Plaintiffs' allegation that the property was purchased for future expansion of the Detroit Refinery, the Court must accept this well-pleaded factual allegation as true at this procedural juncture. The Court notes, however, that there is nothing improper about Defendant's desire to expand the refinery. Indeed, a planned facility expansion strikes this Court as a prime example of a legitimate business purpose.

in the Informational Handbook it distributed in conjunction with the property

purchasing program do not save the day, as Plaintiffs were admittedly not involved

in these transactions and have failed to draw any sort of connection between the

supposedly inadequate disclosures and an intent to interfere with Plaintiffs'

businesses.  (Second Am. Compl. ¶¶ 9, 11k-11o.)  Of greater import, Plaintiffs have

not provided any allegations drawing any rational connection between Defendant's

allegedly intentional concealment of information from area residents and

Defendant's alleged purpose of interfering with Plaintiffs' businesses.  Plaintiffs'

protestations to the contrary in their Sur-Reply do not change this analysis.  (Pls.'

Sur-Reply 5 ("Plaintiffs have alleged and will ultimately demonstrate that the

publicly available handbook provided absolutely no information about the

existence of such environmental claims, or that a waiver would be required in

conjunction with the sale to Marathon or the value of such claims to participants in

the buy-out program.").)  Even assuming this is true, these omissions to residential

owners in the Oakwood Heights subdivision are untethered from an intent to

interfere with Plaintiffs' businesses.

Plaintiffs have also failed to sufficiently allege facts in support of their claim

that Defendant's acts, though lawful, were malicious.  *Advocacy Org.*, 257 Mich.

App. at 383, 670 N.W.2d at 579 (citation omitted).  This is because Plaintiffs have

not alleged facts from which this Court can reasonably infer that Defendant acted

15

with the requisite state of mind.  Although Plaintiffs correctly point out that

Federal Rule of Civil Procedure 9(b) permits "[m]alice, intent, knowledge, and

other conditions of a person's mind [to] be alleged generally[,]" this Rule does not,

as Plaintiffs insist, permit a party to simply parrot the state of mind required by a

particular cause of action.  Rather, to withstand dismissal, factual allegations

corroborating Defendant's malicious intent are necessary.  Requiring corroborating

facts does not, as Plaintiffs maintain, require Plaintiffs to *prove* anything; rather,

factual enhancement is part of the federal *pleading* standard.  As the Sixth Circuit

has stated in the context of Rule 9(b)'s heightened pleading requirement for fraud

and mistake, "Rule 9(b)'s particularity requirement does not mute the general

principles set out in Rule 8; rather, the two rules must be read in harmony."  *Saltire

Indus., Inc. v. Waller, Lansden, Dortch & Davis, P.L.L.C.*, 491 F.3d 522, 526 (6th

Cir. 2007) (quotation omitted).  In other words, although Rule 9(b) permits

conditions of the mind to be alleged generally, such allegations are still subject to

the plausibility standard articulated in *Twombly* and its progeny.  Indeed, the

Supreme Court stated as much in *Iqbal*, where it noted that "'generally' is a

relative term."  556 U.S. at 686, 129 S. Ct. at 1954.  While malice is not a matter

that requires particularity in pleading, Rule 9(b) does not give plaintiffs "a license

to evade the less rigid – though still operative – strictures of Rule 8."  *Id.* at 686-

87, 129 S. Ct. at 1954.  Thus, "to make out a plausible malice claim, a plaintiff

16

must still lay out enough facts from which malice might reasonably be inferred[.]"
*Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012).
This, Plaintiffs have failed to do.

In sum, any connection between Plaintiffs' factual allegations and a
plausible inference of malice is, in this Court's opinion, too attenuated.  Despite
the conclusory assertions of malice and purposeful interference, there are no facts
in Plaintiffs' pleading supporting the fair inference of either malice or an
orchestrated effort to interfere with Plaintiffs' business relationships.  Rather, at
best, Plaintiffs have alleged that Defendant lawfully purchased property for the
purpose of expanding the Detroit Refinery and that Plaintiffs' businesses suffered
as a result.  Even assuming that Defendant knew that the property purchase
program would depopulate Oakwood Heights and have an adverse impact on the
businesses that remained, knowledge does not equate to malice.  *Saab Auto. AB v.
Gen. Motors Co.*, 770 F.3d 436, 441 (6th Cir. 2014) (applying Michigan law)
("Intentional interference 'requires more than just purposeful or knowing behavior
on the part of the defendant.'") (quoting *Wausau Underwriters Ins. Co. v. Vulcan
Dev., Inc.*, 323 F.3d 396, 404 (6th Cir. 2003)).  Because Plaintiffs' Second
Amended Complaint lacks the factual enhancement to "nudge[] the[] claims across
the line from conceivable to plausible[,]" *Twombly*, 550 U.S. at 570, 127 S. Ct at
1974, the Court dismisses Count I with prejudice.

17

**B.      Count II – Nuisance**

In Count II, Plaintiffs seek to state a claim for nuisance stemming from the DHOUP, which commenced operating in November of 2012.  They allege that the DHOUP increased the emission of pollutants into the ambient air and that these pollutants were carried by air currents into the Oakwood Heights neighborhood and onto Plaintiffs' properties.  (Second Am. Compl. ¶¶ 19-21.)  These increased emissions "unreasonably interfered with [P]laintiffs' use and enjoyment of their premises and interfere[ed] with the successful and profitable operation of their businesses thus constituting a nuisance condition as to them and their customers." (*Id.* ¶ 22.)

Under Michigan law, "[a]n actor is subject to liability for private nuisance for a nontresspassory invasion of another's interest in the private use and enjoyment of land if":

> (a) the other has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm, (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional and unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct.

*Terlecki v. Steward*, 278 Mich. App. 644, 654, 754 N.W.2d 899, 907 (Mich. Ct. App. 2008).

Defendant argues that Plaintiffs have not alleged sufficient factual content, taken as true, to state a viable claim, as they have failed to allege facts supporting

18

their theory that the alleged interference was unreasonable or resulted in significant

harm.  Interestingly, Plaintiffs devote little attention to this argument, focusing

instead on Defendant's arguments concerning the three-year limitations period and

Michigan's abolition of the continuing nuisance doctrine.  Perhaps not recognizing

that the limitations period argument is secondary to the threshold issue of whether

or not Plaintiffs have stated a viable claim of nuisance against Defendant, Plaintiffs

do not endeavor to explain how the emissions interfered with their use and

enjoyment of their properties, let alone how the interference was unreasonable in

light of the Detroit Refinery's utility.  Perhaps the argument is that the increased

emissions ensured the success of the property buyout program, thus interfering

with the businesses by guaranteeing that the neighborhood would be stripped of its

consumer base, but this Court is simply left to guess.  Instead of providing factual

content, Plaintiffs' pleading parrots the elements of a nuisance action and contains

legal conclusions that are not entitled to a presumption of truth.  *Acosta Orellana v.*

*CropLife Int'l*, 711 F. Supp. 2d 81, 103 n.25 (D.D.C. 2010) (dismissing plaintiffs'

nuisance claim where complaint recited "conclusory allegations that the defendants

'substantial[ly] and unreasonabl[y] interefer[ed] with the [plaintiffs'] use and

enjoyment' of their land, . . . without the necessary factual support to maintain the

claim.  Absent more detailed allegations, the defendants are not on notice of what

use or enjoyment of the plaintiffs' land has been violated or how the interference

19

substantially interfered with the plaintiffs' enjoyment of their property.").  Such

bare bones allegations are insufficient to withstand Defendant's request for

dismissal.  The Court therefore dismisses Count II.[9]

### C.    Plaintiffs' Request to Amend

In their Response, Plaintiffs have requested an opportunity to amend their

pleading should the Court conclude that it is deficient.  (Pls.' Resp. 17.)  Defendant

opposes this request, noting that the Second Amended Complaint represents

"Plaintiffs' third bite at the same apple."  (Def.'s Br. 1.)  Because Plaintiffs have

benefitted from the opportunity to amend their pleading twice previously, the

Court is inclined to agree with Defendant.  Plaintiffs' request to amend is therefore

denied.

### D.    Defendant's Request for Costs and Fees

In addition to dismissal of the claims asserted against it, Defendant asks this

Court to enter an order awarding it "costs and attorney fees wrongfully incurred."

(Def.'s Br. 24.)  Despite requesting such relief, and perhaps unaware that awarding

attorney's fees to a prevailing party is a rare occurrence, Defendant fails to cite to a

single rule, statute, or case in support of such relief, and further fails to present any

argument as to why such relief is proper under the circumstances presented here.

---

[9] Because the Court concludes that Plaintiffs have not discharged their
pleading burden in Count II of their Second Amended Complaint, the Court
declines to address the parties' arguments regarding the limitations period and the
abolition of the continuing wrongs doctrine.

20

As every student attending an American law school presumptively learns, there exists a "bedrock principle known as the American Rule," under which "each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1175 (2013). Although a federal court may, relying on its inherent equitable powers, award attorney's fees in a narrow set of circumstances, *see, e.g.*, *Wolfe v. Perry*, 412 F.3d 707, 720 (6th Cir. 2005), the Court declines to award Defendant its attorney's fees where Defendant has expended negligible energy in pursuit of its request.

## IV.   CONCLUSION AND ORDER

For the reasons set forth herein, the Court concludes that Plaintiffs have failed to state a viable claim for relief on either count set forth in their Second Amended Complaint.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss Second Amended Complaint (ECF No. 22) is **GRANTED**, Plaintiff's request to amend is **DENIED**, and Plaintiffs' Second Amended Complaint (ECF No. 21) is **DISMISSED WITH PREJUDICE**.

Dated: September 15, 2015

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

**Donnelly W. Hadden, Esq.**
**Amy M. Johnston, Esq.**
**Conor Terrence Fitzpatrick, Esq.**
**Michael C. Simoni, Esq.**
**Samantha S. Galecki, Esq.**